Dave NEWMAN, Vincent Cassidy, Frank Gallaro, Edward Guy, David Spira, Edward Sevilla, Aaron Bookin, John Scott, Vinny Daniele, Raymond Hughes, Arcangel Ascencio, Alfredo Bernard, Sigmund Barckhaus, Brent Kramer, Edward Davis, Raymond Palmieri, William Fairchild, Euston Stewart, John Schuster, Edward McDonald, Joseph Bellone and Elizabeth Winiarski, Plaintiffs-Appellees,

v.

LOCAL 1101, COMMUNICATIONS WORKERS OF AMERICA, A.F.L.-C.I.O., Edward Dempsey, President, Robert Barbarelli, Vice-President and Richard McLaughlin, Business Agent of Local 1101, Communications Workers of America, A.F.L.-C.I.O., Defendants-Appellants.

No. 498, Docket 78–7480.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1979.

Decided April 25, 1979.

Malcolm A. Goldstein, New York City (Michael Klein, O'Donnell & Schwartz, New York City, of counsel), for defendants-appellants.

Amy Gladstein, Brooklyn, N. Y. (Loren Siegel, Gladstein, Reif & Seigel, Brooklyn, N. Y., of counsel), for plaintiffs-appellees.

Ronald H. Shechtman, New York City (Gordon & Shechtman, New York City, Paul Alan Levy, Arthur L. Fox, II, Public Citizen Litigation Group, Washington, D. C., of counsel), for amici curiae PROD, Teamsters for a Democratic Union, Independent Skilled Trades Council, United Rank and File Committee, Committee for Concerned Transit Workers, United Coalition, United Women's Alliance to Gain Equality, United Construction Workers' Association.

Before LUMBARD, MOORE and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Local 1101, Communications Workers of America, A.F.L.–C.I.O. ("Local") and various of its officers appeal from a judgment of the District Court for the Southern District of New York entered by Judge Whitman Knapp on September 6, 1978, pursuant to his decision dated July 26, 1978, enjoining them to reinstate plaintiff Dave Newman to his position as a job steward of the Local. The decision and judgment followed a non-jury trial held after an earlier preliminary injunction had been reversed and remanded by us pursuant to our decision dated January 26, 1978, 570 F.2d 439. Upon the present appeal the principal questions are whether the district court failed to apply the standards prescribed by us and whether its findings are clearly erroneous. Since both of these questions must be answered in the negative, we affirm.

Since the background of the dispute is set forth in our earlier opinion, 570 F.2d at 442–44, we need not repeat it here except to note that plaintiff, a member and former job steward of the Local, together with various other members of the Local, brought this action against it seeking his reinstatement as a steward and other relief. The principal claim is that the defendants violated plaintiffs' free speech rights as union members under §§ 101(a)(2) and 609 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(2) and 529 (LMRDA), by refusing to certify as a job steward any member who exercised his free speech rights as such under § 101(a)(2) and by decertifying plaintiff Newman as a job steward because of his exercise of these rights. We reversed the grant of preliminary relief for the reason that the district court's decision, based solely on affidavits filed by the parties (which conflicted with respect to some material facts), failed to differentiate between the Local's right to discipline its officials or agents as such for insubordination in implementing its policies and the right of members as such to criticize the Local's management. We also found no showing in the record that the purpose or effect of decertifying Newman as a job steward was to discourage his free speech rights as a member or those of others as members. We pointed out:

> "As a member of the union a union official or employee, of course, enjoys the rights guaranteed by LMRDA, [citations omitted] and his suspension or removal in reprisal for his exercise of his free speech rights as a member would violate the Act, [citations omitted]. On the other hand, a union official or employee also has certain duties toward the organization he represents and its leadership, which usually (as in this case) has been elected by the members according to democratic procedures, and has been entrusted with the responsibility for supervision of the union's affairs, including the formulation of policies, plans and programs believed to be in the best interests of the membership. See *Wambles v. International Bro. of Teamsters, Chauffeurs*, 488 F.2d 888

(5th Cir. 1974). Although a person is free as a union member to criticize mercilessly his union's management and its policies, once he accepts a union position obligating him fairly to explain or carry out the union's policies or programs, he may not engage in conduct inconsistent with these duties without risking removal as an official or employee (but not as a union member) on the ground that his conduct precludes his effective representation of the union. Unless the management of a union, like that of any other going enterprise, could command a reasonable degree of loyalty and support from its representatives, it could not effectively function very long. To obligate union leadership to tolerate open defiance of, or disagreement with, its plans by those responsible for carrying them out, would be to invite disaster for the union.

> "The Local 1101 job steward, unlike other members of the union, wears a second hat, that of an agent of the union. While he is not precluded from exercising his free speech rights as a member, he is also under a duty as a representative of the union's management to cooperate with it and to implement its directives. He may not, while acting as the union's agent, sabotage or subvert its policies in the name of free speech. Similarly the union's leadership, although entitled to establish union policies and to demand reasonable adherence to them by its agents, may not discipline a job steward for the purpose of suppressing or chilling his exercise of free speech rights or that of others *as members*.

> "In this tension between conflicting rights and duties of the union and its agents the balance to be struck depends on whether the union representative's exercise of his free speech rights may reasonably be viewed as impairing his ability to function effectively as a representative of the union's management. If so, the union may remove him, provided he remains free as a member openly to criticize the union's leadership and its policies without reprisal. We do not believe that

Congress intended Title I of LMRDA to insulate union officials, employees, or agents from removal, or to permit a union representative who disagrees with its leadership to freeze himself in office on First Amendment grounds.

"The inquiry in each case, therefore, must be to determine whether a member's opposition to the union's programs or policies may be reasonably viewed as precluding him from acting effectively as its representative, and whether his removal from his official position would tend to prevent him or others from exercising their rights as members under Title I of LMRDA." 570 F.2d at 444–45 (emphasis in original).

We concluded on the record as it thus stood that Newman's conduct appeared to have precluded his effective functioning as an agent of the Local, which would have justified decertification of him as a job steward, and that there was no evidence that the exercise by him or other members of their free speech rights had been chilled or deterred.

Upon remand Judge Knapp, after allowing plaintiffs to file an amended complaint,[1] held a two-day non-jury trial at which extensive evidence, including testimony by Newman, Edward Dempsey (Pres. of the Local), various other Local officials and members, was received and exhibits introduced. On July 26, 1978, Judge Knapp filed his decision, incorporating detailed findings of fact, in which he appraised the credibility of the witnesses and analyzed the evidence. He concluded that, despite Newman's opposition to policies of the Local's management, he had faithfully and effectively performed his duties as a job steward, explaining to members the leadership's position on policies with which he disagreed, supporting the Local's fund-raising and petition drives despite his own belief that they were not in the members' best interests, and carrying out any Local policy or program he was directed to implement.

With respect to Newman's opposition to the Local's policies, Judge Knapp found that Newman had not interrupted, much less disrupted, the December 1, 1976, Broad Street meeting of some Local members at which President Dempsey had presented the Local's proposed policy for impending negotiations on their behalf with the employer. The meeting, moreover, was held at a time when the Local was soliciting views from members regarding the policy to be adopted. Lastly, and of equal significance, is the court's finding that the purpose and effect of the decertification of Newman was not to discipline him for failure properly to perform his duties as job steward but to stifle not only Newman but members generally from exercising their rights openly to criticize the Local's management, to publish their views, and to run for office.

 The district court applied the proper standards as outlined in our earlier decision and was "not unmindful of the fine line which must be drawn between what might be termed insubordination on the one hand and freedom of speech on the other," *Wood v. Dennis*, 489 F.2d 849, 855–56 (7th Cir. 1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). Moreover, although there was conflicting evidence with respect to some issues, Judge Knapp's key findings, being supported by evidence found by him to be credible, cannot be labelled clearly erroneous, F.R.Civ.P. 52(a). We are not therefore dealing with the case of an appointed or elected official of a union who seeks "to completely subvert the purpose of his employment by engaging in activities diametrically opposed to the performance of his specified duties," *Sewell v. Grand Lodge*, 445 F.2d 545, 550–51 (5th Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). Nor does our affirmance preclude the Local from imposing upon its officers, stewards and other representatives, reasonable rules designed to assure that they will cooperate in imple-

---

1. The amended complaint added a claim to the effect that following his reinstatement as a result of the district court's decision Newman had been re-elected but then decertified again after our reversal of that decision.

menting the management's policies or programs and in spreading its views or from removing a representative who fails to do so, provided the Local does nothing to inhibit the representative from exercising his rights under LMRDA as a member to criticize the Local's management or policies.

The judgment is affirmed.

