663 F.2d 1048
 109 L.R.R.M. (BNA) 2202, 92 Lab.Cas. P 13,176
 Elbert ERKINS, Samuel Denson and Perry Culpepper,
Plaintiffs-Appellants,
v.
Billy BRYAN, Arthur Comer, George Bullard and Charlie
Greene, Defendants-Appellees,
United Steelworkers of America, AFL-CIO-CLC, Intervenor-Appellee.
 No. 80-7559.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 14, 1981.
 
 Jacobson, Sodos, Melnick & Krings, Thomas M. Jacobson, Milwaukee, Wis., William I. Grubb, II, Eufaula, Ala., Walter F. Kelly, Milwaukee, Wis., for plaintiffs-appellants.
 Cooper, Mitch & Crawford, Jerome A. Cooper, Birmingham, Ala., for Bryan, et al.
 James D. English, Associate Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., Bernard Kleiman, Gen. Counsel, Chicago, Ill., for United Steelworkers of America.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 By this appeal we are required to construe and apply the provisions of the Landrum-Griffin Act, particularly 29 U.S.C. § 501(b) when persons alleging themselves to be members of a local union seek permission of a United States district court to file an action against former officers of the local alleging misappropriation of union funds, in which action the prospective plaintiffs seek to make a recovery for the benefit of the union.
 
 This section provides:
 
 2
 When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.
 
 
 3
 29 U.S.C. § 501(b).
 
 
 4
 The petitioners, here the appellants, filed their petition with the district court seeking permission to file their suit as members of Local 7326 of the International Union, United Steel Workers, alleging that several former officers had, during a strike in which the petitioners had participated, embezzled and misappropriated money furnished to the Union by the International for strike benefits. The petition alleged that the petitioners were, at the time, members of Local 7326. They alleged sufficient facts which would have supported a complaint alleging misapplication of funds as outlined in § 501(b). They also alleged that they had "made demand by letter to United Steel Workers of America (their international union) to take the necessary action to prevent any further union funds from being misused by defendants for the abovementioned purposes, and to take immediate steps, by filing court action, to recover from the individual defendants the funds the defendants have wrongfully expended." They alleged the officers of the International had failed under a reasonable time to take such action. Based on such application, sworn to by the parties and presented to the court ex parte as is permitted under the statute, the trial court entered its order granting leave to file the petitioners' complaint.
 
 
 5
 Thereafter, after granting leave to the named respondents to delay the filing of their response, the trial court set down for a hearing a motion by United Steel Workers of America for permission to intervene for the purpose of moving the court to revoke its order permitting the filing of petitioners' complaint. This motion to intervene was supported by a long affidavit by the associate general counsel of the United Steel Workers of America, who outlined the usual procedures for the handling of the affairs of locals which are in similar circumstances to Local No. 7326. Neither the petition to intervene nor the Frankel affidavit categorically stated that the petitioners were no longer "members" of the union. This affidavit was extensively answered by counsel for petitioners prior to the hearing conducted by the trial court. The court did not enter an order allowing the intervention, but considered the pleading and affidavit as though it had done so.
 
 
 6
 The historical facts necessary for us to consider the correctness of the trial court's order revoking its original grant of permission to the petitioners to file their complaint are not in dispute. The membership of Local 7326 consisted entirely of production and maintenance employees employed by American Buildings Company in Eufaula, Alabama. As of January 1, 1978 there were approximately 300 workers employed in the plant. There was a similar number of members of the Local in December of 1976, at the time of the expiration of the most recent collective bargaining agreement between the Local and the Company. Following the expiration of that agreement, USW commenced a strike against the Company over the terms of a proposed new agreement. The strike was authorized by a vote of the membership of Local 7326. It proved to be a long, bitterly contested struggle which was lost in the end by the Union. In support of the strike the AFL-CIO declared a boycott of the Company's products. The Local lost the right to represent the Company's employees following its defeat in a National Labor Relations Board decertification election conducted on May 18, 1978. This election became final by the Board's certification of the results of the election on July 14, 1978.
 
 
 7
 Local 7326 did not serve as collective bargaining representative for employees of any other employer than American Building Company. Thereupon, by letter dated July 14, 1978, the director of the district of USW in which Local 7326 was located requested that an administrator be appointed for Local 7326. This was apparently done under the provisions of Article IX of International's constitution which provides "in the event the International president shall have reason to believe any local union is failing to comply with any provision of the constitution, or that action may be required for one of the purposes specified in the following paragraph, the International president may, unilaterally or at the request of officers or members of the local union, institute proceedings ..." which may after appropriate hearings result in "suspending or revoking the charter of any such local union." Included as one of the purposes mentioned above for which such action can be taken is "otherwise carrying out the legitimate objects of the International union or such local." Presumably, in the opinion of the district director, such administrator was to be appointed because, in the language of the general counsel's affidavit: "This is the usual first step in a procedure followed in cases where locals have ceased to represent any employees." (Emphasis added.)
 
 
 8
 Following this appointment, the parties apparently agree that Local 7326 has been dormant; no dues have been paid and no meetings have been held. There apparently have been no collective bargaining or other union activities. Petitioners are still employees of American Buildings Company.
 
 
 9
 The International contends that under these circumstances, the petitioners were no longer "members" of the Union. Petitioners, on the other hand, contend that until the charter has been revoked, the administrator has completed his audit and the funds have been properly disbursed, they are still members of the Local and of the International. They further contend that even if they were not technically "members" at the time the suit was filed, they nevertheless should be treated as "members-in-substance" and be permitted to file the complaint as members.
 
 
 10
 Although the petitioners, in their opposition to the trial court's reconsideration of its order granting permission to file the complaint, included a paragraph quoting from the Landrum-Griffin Act section under "definitions" dealing with "members," the trial court did not mention this definition in its disposition of the case. It held, in effect, that the decertification brought about the dormancy of the Local which resulted in the loss of membership by all of its previous members, including the petitioners. It held that since they were not technically members they were not qualified under the statute to file such a complaint. The court bolstered its determination of this issue by equating the status of a "member" under § 502 with that of a former stockholder in a derivate suit, citing in support of this theory, Phillips v. Osborne, 403 F.2d 826 (9th Cir. 1968). This Court has held that a former stockholder is not qualified to bring an action on behalf of his corporation under Fed.R.Civ.Proc. 23.1. Schilling v. Belcher, 582 F.2d 995 (5th Cir. 1978), where we stated: "Only a shareholder, by virtue of his 'proprietary interest in the corporate enterprise,' " Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 321, 56 S.Ct. 466, 471, 80 L.Ed. 688 (1936), may " 'step into the corporation's shoes and ... seek in its right the restitution he could not demand in his own.' "
 
 
 11
 The difficulty with this reasoning is that this statute makes a "member" of the union a statutory representative "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." 29 U.S.C. § 501(b). It is thus not necessary that the petitioners in such an action as this have any personal stake in the outcome of the litigation. If the petitioners are members, the law says they have the standing to conduct litigation.
 
 
 12
 Moreover, it is appropriate when considering the meaning of the words in § 501(b) to look at the definition section of Chapter 11, of which this section is a part. This definition section is found at 29 U.S.C. § 402, in which it is stated:
 
 
 13
 For the purposes of this chapter ... P O "member" or "member in good standing," when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the Constitution and bylaws of such organization.
 
 
 14
 The proof before the court at the time of the hearing was that these petitioners were still employees, they had not voluntarily withdrawn from membership and they had not been expelled or suspended from membership. It is difficult to understand, therefore, how the International can contend that they were not "members" of the Local at the time the suit was filed. When it was creating a new right in "members" of a union, it was surely within the power of Congress to say "for the purposes of this Chapter we now say who is a member." That is the precise language of the statute.
 
 
 15
 The effect to be given to this definition has been ably described by the Court of Appeals for the Seventh Circuit:
 
 
 16
 As is apparent from the choice of terms, Congress did not limit the protections of the Landrum-Griffin Act to those whom the union recognizes as members. Rather, one who has fulfilled the membership requirements, that is, one who is a member in substance, is protected. Hughes v. Local 11, International Association of Bridge, Structural & Ornamental Ironworkers, 287 F.2d 810, 814 (3d Cir.), cert. denied, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961). There is little dispute that the laid-off employees satisfied the union's membership requirements. There is also little dispute that the laid-off employees were not members in good standing because they had not paid dues since their layoff. But under section 402(c), one who has met the membership requirements remains a member within the meaning of the Act until one of two events occur: (1) the member voluntarily withdraws from the union or (2) the union expels or suspends the member after "appropriate proceedings" held pursuant to lawful constitutional or bylaw provisions. See Brennan v. Independent Lift Truck Builders Union, 490 F.2d 213, 217 & n.6 (7th Cir. 1974). Neither of these events occurred here; the union simply classified the laid-off employees as being no longer in good standing. Since laid-off employees did not voluntarily withdraw and the union did not expel or suspend them, they are "members" and therefore protected by the equal rights guarantee of section 411, subject to the union's reasonable rules and regulations.
 
 
 17
 Alvey v. General Elec. Co., 622 F.2d 1279, 1284 (7th Cir. 1980).
 
 
 18
 We recognize that a particular union may have internal rules of membership, but these cannot limit the definition of "member" as contained in the statute that creates a cause of action by a "member." See Hughes v. Local 11, etc., 287 F.2d 810, 817 (3d Cir. 1960). In any event, there is nothing in the constitution[1] of the International that is inconsistent with the definition of "member" in the statute. The assistant general counsel's affidavit, as quoted above, simply states that the administrator, William Caldwell, "took over the affairs of the local upon his appointment. This is the usual first step in the procedure followed in cases where locals have ceased to represent any employees." Article IX provides that when an administrator is appointed for a local union, he
 
 
 19
 shall have the right to demand and receive in the name of the International union, and the local union officers shall have the obligation to turn over, the charter and all books, records, monies, assets and property of the local union, to be held in trust for the local union and to be used and expended only in the proper conduct of its affairs. The administrator shall have the right to replace officers, grievants or other committee members or stewards removed by the International executive board or the administrator, by appointing temporary officers, grievants or other committee members or stewards. (Emphasis added.)
 
 
 20
 Thus, it is plain that the appointment of an administrator does not in and of itself terminate the Local. Since the Local cannot exist without members, it seems clear even under the constitution, that the persons who are in good standing upon the date of the appointment of the administrator continue to be members unless they are subsequently suspended or expelled or elect to "voluntarily withdraw."
 
 
 21
 The record is silent as to what activities the administrator engaged in during the 18 months between the time he took charge and the filing of the petition now before the Court. It is clear, however, that the charter had not been surrendered or canceled by the International, no proceedings had been started against any members looking towards their expulsion and none of them had voluntarily withdrawn from membership. The record discloses that there was some $2,000 in the treasury of the Local at the time the administrator was appointed and the record is not at all clear that pending the final winding up of the Local's affairs these funds belonged to the International as distinguished from the Local for whom, under the language quoted above, they were "to be held in trust ... and to be used and expended only in the proper conduct of its affairs."
 
 
 22
 The International further claims, however, that an ingredient in the trial court's decision granting such a petition is that there must be a finding that there had been a showing of "good cause." The International contends that the way it handled the matter instead of filing suit as outlined in the statute itself would have been more beneficial to the Union than to have acted as requested by the members. This, of course, cannot establish a want of good cause, because the language of the statute is clear and simple. The petitioners may act once they have notified the International and have requested that a suit be brought and there is a failure within a reasonable time to bring such suit. The trial court could not second guess the purpose of the statute by saying that some other precondition to the filing of a petition may take the place of the one laid down in the text of the section. The trial court found that this precondition had been satisfied.
 
 
 23
 In its motion to the trial court to vacate its original order, the International stated that one of its purposes was to "enable the Court to consider the matter of plaintiff's compliance with the jurisdictional prerequisites to this action and the question of 'good cause' under 29 U.S.C. § 501(b) on the basis of a full record." Upon the trial court's reconsideration, responding to such motion, the court did not withdraw or modify its earlier determination that the preconditions other than that of membership had been satisfied. It held only that the membership requirement had not been satisfied and made this the basis of its withdrawal of its earlier order.
 
 
 24
 Whatever may ordinarily be the requirement of the section as to the establishment of good cause, we are satisfied that it was adequately established in this case, once we have determined that these petitioners were members as contemplated by the Act. See, e. g., Horner v. Ferron, 362 F.2d 224 (9th Cir. 1966) and Dinko v. Wall, 531 F.2d 68 (2d Cir. 1976), which comments on Horner v. Ferron as the "most extensive treatment of good cause" to be found. Rather than accepting the standard of Dinko that the good cause requirement in § 501(b) means "that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence," we associate ourselves with the standard of the Court of Appeals for the Ninth Circuit as announced in Horner, supra. There, the Court said:
 
 
 25
 Thus if the defendant can establish by undisputed affidavit, facts which demonstrate that the plaintiff is not a member of the defendant union, or that the action is outlawed by a statute of limitations, or that the action cannot succeed because of the application of the principles res judicata or collateral estoppel, or that plaintiff has not complied with some controlling condition precedent to the bringing of such a suit, then although these defects do not appear on the face of the complaint, they may warrant denial of the application.
 
 
 26
 However, we think it inappropriate to consider, at such a hearing, defenses which require the resolution of complex questions of law going to the substance of the case. Defenses of this kind should be appraised only on motion for summary judgment or after a trial. Defenses which necessitate the determination of a genuine issue of material fact, being beyond the scope of summary judgment procedure, are a fortiori, beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed. Defenses involving disputed questions of fact should be appraised only after a trial at which the parties and the court can have the benefit of a complete inquiry, assisted by such pre-trial discovery as may be undertaken. (Footnotes omitted.)
 
 
 27
 362 F.2d at 229.
 
 
 28
 Under such a standard, we conclude that good cause was shown in this case.
 
 
 29
 Upon the filing of the motion by the law firm of Cooper, Mitch and Crawford, for a delay within which to plead to the original complaint, the petitioners filed their motion "to disqualify the law firm of Cooper, Mitch and Crawford and any and all individual attorneys therein from providing legal service of any nature to the named defendants herein." The motion also sought an order "enjoining the United Steel Workers of America from engaging legal counsel or retaining legal counsel on behalf of the individual defendants herein." The grounds for the alleged disqualification were the assertions by the petitioners that the said law firm had represented the Local in proceedings before the National Labor Relations Board prior to the decertification order and that the International should be enjoined from otherwise providing counsel because of a conflict of interest, pursuant to the Labor Management Reporting and Disclosure Act of 1959. The trial court did not pass on these motions. They remain to be dealt with upon remand.
 
 
 30
 The trial court's order of June 30, 1980, 494 F.Supp. 732, withdrawing the leave to file a complaint previously granted on May 1, 1980 is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Parts of the constitution were quoted in affidavits of the International. Petitioner moved this Court to supplement the record by receiving the entire constitution in evidence. This was not objected to by the International. We, therefore, grant that motion