Jane AGOLA, et al., Plaintiffs,

v.

William L. HAGNER, etc., et al., Defendants.

No. CV 82–0013.

United States District Court,
E.D. New York.

July 21, 1982.

Hall, Clifton & Schwartz, New York City, for plaintiffs.

Cohen, Weiss & Simon, New York City, for defendants.

MISHLER, District Judge.

Plaintiffs bring this motion for leave, *nunc pro tunc,* to include in their complaint a cause of action for breach of fiduciary duty under Section 501(a) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"); 29 U.S.C. § 501(a).[1] The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and LMRDA § 102, 29 U.S.C. § 412.

Plaintiffs brought suit against International Brotherhood of Teamsters ("IBT"), Local 803 of IBT ("Local 803") and William Hagner, President of Local 803 ("Hagner"), claiming that defendants deprived them of strike benefits[2] and wrongfully abandoned plaintiffs during a strike.[3] As an additional cause of action, plaintiffs alleged that such behavior by defendants constituted a breach of fiduciary duty under LMRDA § 501(a); 29 U.S.C. § 501(a). Plaintiffs failed, however, to receive prior leave of the court before bringing action under § 501, as required by that statute.[4] Plaintiffs requested such leave, *nunc pro tunc* and oral argument was heard on plaintiffs' motion.

Defendants raised two arguments in opposition to the motion before us: first, that plaintiffs' allegations of wrongful behavior do not state a claim against defendants under the narrow scope of § 501 and, second, that leave of the court cannot be

---

**1.** LMRDA § 501(a), 29 U.S.C. § 501(a) provides:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

**2.** Plaintiffs' Complaint, first, second and third causes of action.

**3.** Plaintiffs' Complaint, fourth, fifth and sixth causes of action.

**4.** LMRDA § 501(b), 29 U.S.C. § 501(b) provides:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

granted where plaintiffs have not satisfied the mandatory requirements set forth at § 501(b). We do not here decide the merits of plaintiffs' other statutory or pendent claims.[5] We conclude that the cause of action for breach of fiduciary duty under § 501 and the remedies afforded thereunder do not apply to the alleged behavior of defendants in this case. In addition, plaintiffs have not satisfied the statutory requirements of § 501(b). Accordingly, plaintiffs' motion for leave, *nunc pro tunc,* to plead under LMRDA § 501 is denied.

*Facts*

Plaintiffs were employed as part-time and full-time registered nurses at Brunswick Hospital Center ("Brunswick") in Amityville, New York. Local 803 was certified by the National Labor Relations Board ("NLRB") as the exclusive collective bargaining representative for plaintiffs on April 8, 1980, following a representation election conducted by NLRB in March, 1980. Prior to the certification election, Local 803 distributed leaflets, dated March 7, 1980, which stated, *inter alia,* that "NO INITIATION FEE" would be charged by Local 803 for any nurse eligible to vote in the election, that "there will be NO DUES to Local 803 for any nurse until a contract [is accepted]" and "if you decide that a strike is what it takes then we will bring to bear the unbeatable resources of the Teamsters Union which will be behind you until you get what you want."[6] Local 803 and Brunswick engaged in negotiations for a collective bargaining agreement but failed to reach agreement by July 11, 1980.

A strike was called by Mr. Hagner against Brunswick on July 11, 1980. The strike continued to November 27, 1981. Each plaintiff received weekly strike bene-

fit payments from IBT through Local 803 for the period from July 11, 1980 to mid-September 1980. No strike benefit payments were made after October 1, 1980 by IBT or Local 803, although plaintiffs claim that they made "demand for such payments"[7] and that "nonpayment was the subject of many complaints by [Ms. Agola] and other plaintiffs to agents of Mr. Hagner and Local 803. "We demanded to know why our strike benefits were not coming through and asked Hagner to look into it."[8] Local 803 informed plaintiffs and Brunswick by letter, dated November 14, 1980, that "Local 803 disclaims interest in representing the registered nurses at Brunswick Hospital Center."[9] Local 803 unilaterally expelled plaintiffs from the labor organization. The nurses' strike continued to November 27, 1981 without representation by Local 803. Events following this period are not relevant here.

*Discussion*

An action may be brought under LMRDA § 501(b) "[w]hen any officer, agent, shop steward or representative of any labor organization is alleged to have violated the duties declared in subsection (a)."[10] Section 501 does not provide a basis for actions against labor organizations. *Head v. Brotherhood of Railway, Airline & Steamship Clerks (BRAC),* 512 F.2d 398, n. 1 (2d Cir.1975); *Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n.,* 477 F.2d 825, 832 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1249 (3d Cir.), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 94 (1972). Thus, plaintiffs' suit for breach of fiduciary duty pursuant to LMRDA § 501 can properly be brought against defendant Hagner, President of

---

5. Plaintiffs' Complaint requests relief with respect to breach of contract, illegal discipline without due process under LMRDA §§ 101(a)(5), 609; U.S.C. §§ 411(a)(5), 529; violation of plaintiffs' rights under LMRDA § 101(a)(2), (5); 29 U.S.C. § 411(a)(2), (5); breach of defendants' duty of fair representation and breach of fiduciary duty pursuant to LMRDA § 501; 29 U.S.C. § 501.

6. Exhibit A attached to Affidavit of Jane Agola. (Original capitalization).

7. Complaint, ¶ 13.

8. Affidavit of Jane Agola, ¶ 9.

9. Exhibit G1 attached to Affidavit of Jane Agola.

10. LMRDA § 501(b); 29 U.S.C. § 501(b).

Local 803, but not against the two defendant labor organizations, Local 803 and IBT.

The fiduciary duty imposed under LMRDA § 501(a) relates to the money and property of the labor organization. Section 501(a) of LMRDA provides that it is the duty of the officers and agents of a labor organization:

to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder . . . ."

29 U.S.C. § 501(a).

In *Gurton v. Arons,* 339 F.2d 371 (2d Cir.1964), the United States Court of Appeals for the Second Circuit first held that § 501:

applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them.

339 F.2d at 375.

This conclusion has been consistently restated by the Second Circuit in subsequent decisions concerning LMRDA § 501. *See United States v. Robinson,* 512 F.2d 491, 495, n. 7 (2d Cir.1975); *Head v. Brac, supra,* 512 F.2d at 400; *Coleman v. Brotherhood of Railway & Steamship Clerks, etc.,* 340 F.2d 206, 209 (2d Cir.1965). That court noted that the actual misuse of union funds for personal or political reasons was found to be an essential element of cases decided in other circuits. *Head v. Brac, supra,* 512 F.2d at 401. *See Pignotti, supra; Sabolsky v. Budzanoski, supra.* The Second Circuit

bases its literal interpretation of § 501 on that statute's legislative history. *See Gurton, supra* (which in turn relies upon the District Court decision in *Guarnaccia v. Kenin,* 234 F.Supp. 429, 442 (S.D.N.Y.1964)). *Gurton* and *Guarnaccia* rely upon a debate between Senators McClellan and Ervin concerning S. 1555, the Kennedy-Ervin Bill. Circuits giving a broader interpretation of the fiduciary duty under § 501 rely upon the legislative history of this statute as it evolved in the House Committee on Education and Labor as the Elliot Bill and later as the Landrum-Griffin Bill which became law. The apparent inconsistency between the circuits is more fully explained in *Pignotti, supra,* 477 F.2d at 832–35 where Judge Gibson concluded that the broader view (extension of the fiduciary principal to all the activities of union officials and other union agents or representatives) is correct, as based upon Congressional intent. While we agree with the conclusion in *Pignotti,* we are, nonetheless, bound by the decisions of the Second Circuit. Accordingly, we conclude that Hagner's alleged abandonment of the striking nurses does not constitute conduct that is within the intended scope of § 501. Further, we conclude that plaintiffs' vague allegations concerning Hagner's possible personal use of the strike funds[11] are inadequate grounds for suit under § 501.

In contrast, Hagner's alleged activities with respect to the non-payment of strike benefits represents a breach of his duty under § 501 "to expend [the labor organization's money and property] in accordance with its constitution and bylaws and any resolutions adopted thereunder."[12] Strike payments are authorized under Article XII, Section 4 of the IBT Constitution.[13]

---

11. Plaintiffs stated, as the only claim of Mr. Hagner's personal misuse of union funds: "[w]e do not know whether Mr. Hagner took the money for himself or put it in the Local 803 treasury." Plaintiff's Affidavit in Support of Application for Leave Under 29 U.S.C. § 501(b), ¶ 9.

12. LMRDA § 501(a); 29 U.S.C. § 501(a).

13. Article XII, Section 4 of the IBT Constitution states, in pertinent part, as follows:

Out of work benefits in strikes recognized as properly subject to the payment of out of work benefits shall be paid to all *members* not in arrears for dues in excess of one (1) month and otherwise in good standing . . . at a rate of thirty-five dollars ($35.00) per week for the first four (4) payments and forty-five dollars ($45.00) per week for the fifth pay-

Plaintiffs' allegation that Mr. Hagner directed IBT to cease making such authorized strike payments [14] constitutes a *prima facie* breach of fiduciary duty under § 501. Nonetheless, we conclude that the remedies afforded under Section 501 are not applicable here because plaintiffs fail to satisfy certain statutory requirements.

Section 501(b) clearly imposes certain conditions precedent to suit. The statute provides that:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

Plaintiffs' suit is defective at the outset because it is not brought for "the benefit of the labor organization." *Phillips v. Osborne,* 403 F.2d 826, 832 (9th Cir.1968). Leave to plead under § 501 was denied in

*Phillips, supra,* where plaintiffs, members of a newly formed union, requested a pro rata distribution of assets which were transferred from their former union local to that local's international. In contrast, an action under § 501 for the recovery of strike benefit funds was permitted in *Erkins v. Bryan,* 663 F.2d 1048 (11th Cir.1981), *reversing,* 494 F.Supp. 732 (N.D.Ala.1980) where the plaintiffs alleged embezzlement and misapplication of strike funds by union officers and an accounting was requested on behalf of the union. *Erkins* did not involve claims for strike payments to individuals. Decisions affording recovery to individuals in an action under § 501 stated that such recovery also benefits the labor organization, although we note that such "benefit" to the union is a non-financial one. *See Pignotti, supra,* 477 F.2d at 835–36; *Johnson v. Nelson,* 325 F.2d 646 (8th Cir.1963). In *Pignotti, supra,* union members sought to recover amounts which had been wrongfully deducted from their pay and paid into a pension plan that had been improperly imposed upon them by the union. The court addressed the statutory requirement that suit be brought to benefit the union and concluded that:

> Here the correction of the past violations of the rights of the members and the breaches of the fiduciary obligations by both the local and International officers will be a benefit to the Local even though the relief must necessarily include the restoration of the funds withheld as a result of the defendants' wrongful acts.[15]

In *Johnson, supra,* certain members sought reimbursement for attorneys' fees and related expenses incurred by them in opposing improper disciplinary actions by union officers. In that case, the court found that the union itself received "substantial benefit" in that "[f]air and orderly procedures were restored to union trials; integrity was restored to the internal democratic processes of Local." 325 F.2d at 653.

---

ment and thereafter; . . ." Plaintiffs' Affidavit in Support of Application for Leave Under 29 U.S.C. § 501(b), ¶ 7 and Exhibit E attached thereto.

**14.** Plaintiffs' Complaint, ¶¶ 33, 34.

**15.** *Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n.,* 477 F.2d 825, 835–36 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973).

It is important to note that in both *Pignotti* and *Johnson,* the scope of fiduciary duty under § 501 was interpreted broadly and that the nature of "the benefit" to be received by the union was similarly interpreted to include non-financial matters. As discussed above, this circuit has consistently held that suit under § 501 is limited to claims concerning the money and property of the union. The remedies afforded under § 501 have therefore concerned the return of money and property to the labor organization. In the case before us, plaintiffs claim for wrongfully withheld strike benefit payments is essentially a jointly-made request for the recovery of individual claims. It is clear that if plaintiffs were able to bring this claim on behalf of a labor organization, as required by § 501(b), any recovery by such union would be only for the purpose of distributing the individual awards. The labor organization would serve as a mere filter, rather than as a participant in the recovery. Any benefit to the union would be non-monetary, *e.g.,* the enforcement of the union's commitments to new members. We conclude that plaintiffs' suit is brought for the benefit of individual plaintiffs and not for the benefit of a labor organization.

■ Plaintiffs' suit is also defective with respect to the statutory requirement that a request or demand be made on the union to bring action to recover or account for the relevant funds. Plaintiffs failed to request suit or an accounting. The repeated inquiries made by the nurses with respect to strike benefit payments do not satisfy the statutory requirement. *See Dinko v. Wall,* 531 F.2d 68 (2d Cir.1976). After plaintiffs received notice of Local 803's withdrawal as bargaining agent (dated November 14, 1980), plaintiffs then mailed a letter to International, dated November 18, 1980, which brought ten "facts" to Mr. Fitzsimmons' attention. Strike benefits were discussed only at paragraph nine, as follows:

> 9. Our strike has been sanctioned and authorized by the International. However, our strike benefits are nine weeks behind in payment and have apparently ceased.[16]

Plaintiffs demanded the support of International and concluded "[i]n the event that support and response to this letter is not given by December 1, 1980, we will have no alternative but to regretfully institute legal action."[17] In *Dinko, supra* the Court of Appeals for the Second Circuit held that the statutory requirement was satisfied by a written request for an accounting which was an "echo" of the language of § 501 although there was no request that the union pursue legal action. 531 F.2d at 73. At best, the plaintiffs before this court have asked for payment and requested "a response" to their claim of overdue strike benefit payments, coupled with the threat of their own suit. We conclude that such request is insufficient to satisfy § 501(b). *See Cassidy v. Horan,* 405 F.2d 230, 232 (2d Cir.1968); *Colcman v. Brotherhood of Railway and Steamship Clerks, etc., supra,* 340 F.2d at 208; *see also: Dinko, supra.*

■ Defendants also argue that plaintiffs' suit is defective in that plaintiffs are no longer members of Local 803 and are therefore not "members" for purposes of suit under § 501. Plaintiffs did not leave Local 803 voluntarily; they were expelled without appropriate proceedings. We find that plaintiffs remain "members" as that term is defined by LMRDA § 3(*o*); 29 U.S.C. § 402(*o*)[18] and are therefore "members" for the purpose of maintaining this action. *See, Erkins, supra,* 663 F.2d at 1049–53. Nonetheless, we agree with de-

---

**16.** Exhibit H attached to Affidavit of Jane Agola.

**17.** *Id.*

**18.** LMRDA § 3(*o*); 29 U.S.C. § 402(*o*) provides as follows:

> (*o*) 'Member' or 'member in good standing', when used in reference to a labor organiza-

tion, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and by-laws of such organization.

fendants in concluding that plaintiffs have failed to satisfy other preconditions to suit imposed under § 501 and that we cannot grant leave to plead under such statute absent a showing of good cause. For purposes of § 501, the term "good cause" is construed to mean that plaintiff "must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have reasonable ground for belief in their existence." *Dinko,* 531 F.2d at 75. Good cause is not shown where, as discussed above, there is a fundamental legal defect in the action. *Id.* While the matter before us raises serious questions concerning defendants' conduct, we are compelled to conclude that with respect to the alleged abandonment, such conduct is not a breach of fiduciary duty under § 501, and with respect to the allegedly withheld strike benefits, the suit for recovery is essentially an action for the benefit of individual plaintiffs and not for the benefit of the union. The motion for leave to plead under § 501, *nunc pro tunc* must be denied, and it is

SO ORDERED.