Troy CARROLL, et al., Plaintiffs,

v.

BOARD OF TRUSTEES, OHIO HIGHWAY DRIVERS WELFARE TRUST, et al., Defendants.

No. C–3–83–164.

United States District Court, S.D. Ohio, W.D.

Oct. 13, 1983.

---

Paul H. Tobias, Cincinnati, Ohio, James L. Jacobson, Dayton, Ohio, for plaintiffs.

Jonas Katz, Dennis Buckley, Cincinnati, Ohio, for defendant Teamsters Local Union No. 100.

Jeffrey B. Shulman, Dayton, Ohio, Lee J. Hutton, Stephen J. Cahn, Cleveland, Ohio, for defendant Board of Trustees of the Ohio Highway Drivers' Welfare Trust.

Sorrell Logothetis, Harriet L. Turney, Dayton, Ohio, Robert M. Baptiste, Joseph E. Santucci, Jr., Charles S. De Angelo, Washington, D.C., for defendant Intern. Union.

## DECISION AND ENTRY OVERRULING MOTION TO DISMISS

RICE, District Judge.

The seven Plaintiffs in this class action lawsuit are members of Local Teamster Unions in Ohio, and are participants in and beneficiaries of the Ohio Highway Drivers Plan. Defendants are the Board of Trustees of the Ohio Highway Drivers' Welfare Trust, the International Brotherhood of Teamsters and its Local 100, the Ohio Conference of Teamsters, and Jackie Presser, President of said Conference (and of the International Brotherhood). Plaintiffs allege causes of action under various provisions of ERISA, 29 U.S.C. §§ 1101–1104, 1132, the Labor-Management Relations Act, 29 U.S.C. §§ 185(a), 186(c)(5), and the Landrum-Griffin Act, 29 U.S.C. § 501. Plaintiffs also allege, *inter alia*, that Defendants promised Teamsters members in 1982 that employers would, if necessary, pay extra amounts to the Ohio Highway Drivers' Welfare Trust, and the Ohio Highway Drivers' Fund, so benefits would not be reduced. Nevertheless, in July of 1982, the Fund trustees announced benefit reductions, apparently due to the employers not having made the extra contributions. These and other actions, Plaintiffs allege, violated provisions of the above-mentioned statutes.

With respect to Defendant Presser, Plaintiffs allege that he has a conflict of interest prohibited by the Landrum-Griffin Act, given

> his leadership role in the Ohio Conference and his position as decision maker with respect to bargaining decisions concerning designation of the Fund to which employer contributions shall be made and by virtue of his conflicting role as decision maker with respect to decisions reached by the Union Trustees on the Board of Trustees and his personal interest in the activities of the Fund and Trust, has a conflict of interest which conflicts with the interests of the Ohio Conference, which is in violation of Section 501 of the Landrum-Griffin Act and has prevented the Conference from making a decision to cover Plaintiffs under a benefit plan other than the Ohio plan.

Complaint, ¶ 21.

Defendant Presser has moved to dismiss the Landrum-Griffin Act claim against him (doc. # 14).[1] The basis for the motion is Plaintiffs' alleged failure to follow the procedural prerequisites of the Act, found in 29 U.S.C. § 501(b). That provision requires, in part, that before a union member

---

1. Plaintiffs acknowledge that the other statutes cited in the complaint do not pertain to Presser.

Plaintiffs' Memorandum Contra, doc. # 18, p. 3 n. *.

can bring suit to redress violations of fiduciary duties (found in § 501(a)) by a union officer, the union must

> refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any [union] member.... No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte.

Plaintiffs did, in fact, have this Court sign their "good cause" shown application (doc. # 2), but the present motion to dismiss can be viewed, in effect, as a motion to vacate that order. *See, Dinko v. Wall*, 531 F.2d 68, 73 (2d Cir.1976).

Plaintiffs did not meet the test found in § 501(b), Defendant argues, since they did not adequately attempt to first seek relief from the union itself, and because their application is not supported by "good cause." For the following reasons, the Court cannot agree with Defendant.

With regard to the first prong of the § 501(b) test, Defendant concedes that while "it may be technically accurate to say that a demand for action has been made by Plaintiffs ... more is required...." Defendant's Motion to Dismiss, doc. # 14, p. 7. Moreover, Defendant argues that the demand (and response) are evidenced by an exchange of letters between Plaintiffs' and Defendants' counsel (verified copies attached to doc. # 14),[2] which show an "ongoing dialogue", between the parties, making any court action "premature." *Id.* at p. 8.

However, the complaint in several places *does* adequately allege a sufficient demand for action by the union. They allege that they "have made numerous written requests for assistance and information concerning the reduction in benefits ... which have been arbitrarily ignored [by Defendants]," that the Defendants have refused,

after request, to change the Ohio Highway Drivers Fund (or consider other alternatives), and that they have exhausted all intra-union remedies. Complaint, ¶¶ 17–22. The exchange of letters between counsel also indicate that Plaintiffs have requested Defendants "to sue or recover damages or secure an accounting or other appropriate relief," pursuant ·to the Landrum-Griffin Act. Doc. # 14, ex. la. Accordingly, Plaintiffs adequately have alleged that they sought to "secure an accounting or other appropriate relief" from Defendants. It may be true that a "dialogue" is "ongoing" between counsel. But nothing in § 501(b) requires that court proceedings be held in abeyance until the dialogue is completed. The statute only requires that Plaintiffs must wait a "reasonable time" after making their demand, before bringing suit. Here, the aforementioned letters indicate that Plaintiffs sued in this Court about one month after Plaintiffs' counsel initially wrote opposing counsel. This would seem to be a "reasonable time" in which to wait to bring suit and, in any event, the record does not show that the "ongoing dialogue" has resulted in any action by the Defendants favorable to the Plaintiffs or toward resolution of the controversy between them.

As indicated in the letters, Defendants' avowed reason for refusing to take any action in response to Plaintiffs' letters is the alleged failure in said letters to specify any factual basis, *inter alia*, for the alleged conflict of interest by Defendant Presser. This reason also forms the basis for Defendant's argument that Plaintiffs have no "good cause" to pursue a § 501 action against Presser. As candidly acknowledged by Defendant, Motion to Dismiss, doc. # 14, pp. 9–10, there appear to be two main views on the scope of that phrase. In *Dinko v. Wall, supra*, the

---

**2.** In ruling on motions to dismiss, pursuant to Fed.R.Civ.P. 12(b), for failure to follow the procedures of 29 U.S.C. § 501(b), courts have considered matters outside the pleadings without necessarily converting the motion into one for summary judgment, pursuant to Fed.R.Civ.P.

56. *See Dinko v. Wall*, 531 F.2d at 75. *See also*, 5 C. Wright & A. Miller, Federal Practice and Procedure, §§ 1351–1354, 1364 (1969) (noting instances where extra-pleading material can be used in Rule 12(b) motions).

Second Circuit agreed that the trial court was not limited to examining the complaint in determining the existence of "good cause." 531 F.2d at 74.

The factual showing to institute a suit should be no more demanding than that required to defend it against a motion for summary judgment; indeed, it should be somewhat less, since at the earlier stage a plaintiff has not yet had a chance for discovery and a defendant will still have the later protection of a summary judgment motion.

*Id.* at 75.

The Court concluded that the goals of § 501(b) ("supervision of union officials in the exercise of their fiduciary obligations and protection, through a preliminary screening mechanism, of the interval operation of unions against unjustified interference or harassment") would be best served

if good cause in section 501(b) is construed to mean that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence.

*Id.*

In contrast, the Eleventh and Ninth Circuits have adopted a somewhat more lenient standard. Those circuits hold that certain dispositive defenses (e.g., statute of limitations) can dispose of a lawsuit early on, but complex and disputed issues of law and fact, "going to the substance of the case [are] beyond the scope of a proceeding to determine whether a section 501(b) complaint may be filed." *Erkins v. Bryan*, 663 F.2d 1048, 1053 (11th Cir.1981), *cert. denied,* — U.S. —, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982) (quoting *Horner v. Furon*, 362 F.2d 224, 229 (9th Cir.1966), *cert. denied,* 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966)).[3]

The Court holds that Plaintiffs have met either standard, though perhaps barely so. The complaint, the § 501 verification order, and the aforementioned letters, if read

carefully, do suggest *some* factual support for the conflict-of-interest allegations against Presser. Section 501(a) of the Act generally prohibits officers of a union from breaching their fiduciary duty to the union. More specifically, that provision requires union officers to, *inter alia,* "hold [union] money and property solely for the benefit of the organization and its members, ... to refrain from dealing with such organization as an adverse party ... and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization...."

While not artfully framed, the complaint (as noted above) appears to assert that Presser has a "personal interest in the activities of the [Teamsters] Fund and Trust," which conflicts with his duty to properly administer the fund and trust. No further factual details are given, although the verification statement asserts that the conflict of interest includes Presser's refusal "to consider designating the Central States Fund as the vehicle for providing benefits for Plaintiffs' because of his interest in the Ohio Fund in which he has a great interest because of his control of the Union Trustees of the Fund." In the application, Plaintiffs aver the truth "upon information and belief" of that statement and the allegations in the complaint relating to Presser. The letters by Plaintiffs' counsel basically reiterate these statements.

These allegations, if read broadly, fall within the purview of § 501(a). Presser, according to Plaintiffs, has some undefined "personal interest" in the Ohio Trust and Ohio Fund, which prevents him from properly administering those entities. Such assertions, verified by Plaintiffs, satisfy either definition of "good cause" outlined above. If Plaintiffs can prove these changes, they would have a "reasonable likelihood of success" in succeeding on the merits of their § 501 claim. Defendants insist that a conflict of interest, to be cogni-

---

**3.** The *Erkins* court expressly observed that it was not following the *Dinko* test. 663 F.2d at 1053.

zable under § 501, must be "pecuniary or personal" in nature. Reply Memorandum, doc. # 21, pp. 4–8. To be sure, the misappropriation of union funds and the like appears to have been the main driving force behind the prohibitions of the Act. But § 501(a) broadly proscribes virtually *any* conflict of interest, *not* just those of a "pecuniary or personal" nature. *See Agola v. Hagner*, 556 F.Supp. 296, 301 (E.D.N. Y.1982); *Suburban Transit Corp. v. NLRB*, 499 F.2d 78, 83 n. 6 (3d Cir.1974), *cert. denied*, 419 U.S. 1089, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974). In any event, Plaintiffs' allegations with respect to Presser, while somewhat vague, could well fall under a "pecuniary or personal" conflict of interest.

For these reasons, the Court finds that, at this time, Plaintiffs have satisfied the prerequisites of § 501(b), sufficient to defeat the motion to dismiss. The motion is overruled. Plaintiffs are admonished, however, that much greater evidentiary support will be needed to defeat a motion for summary judgment by Defendant Presser on the same grounds. *Dinko v. Wall*, 531 F.2d at 75.