340 F.2d 206
 15 A.L.R.3d 933
 Walter T. COLEMAN, Walter L. Cox, David F. Lynch, and
Carolyn L. Klucz, Plaintiffs-Appellants,
v.
BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS AND STATION EMPLOYEES and George M.
Harrison, individually and as Chairman of said Brotherhood's
Grand Executive Council, Defendants-Appellees.
 No. 201, Docket 28889.
 United States Court of Appeals Second Circuit.
 Argued Dec. 15, 1964.
Decided Jan. 8, 1965.
 
 Godfrey P. Schmidt, New York City, for appellants.
 James L. Highsaw, Jr., Washington, D.C. (David Gibbons, New York City, Edward J. Hickey, Jr., Washington, D.C., William J. Donlon, Cincinnati, Ohio, Gen. Counsel for appellee Union, of counsel), for appellees.
 Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 At its annual convention in May 1963, the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees adopted a resolution designated as Resolution No. 611, the effect of which was to create the office of 'Chief Executive' of the Union, to empower the Chief Executive to exercise the same powers as the Grand President, and to fix the salary of the Chief Executive at $60,000 a year.[1]
 
 
 2
 The next day after the convention had adopted Resolution No. 611 the regular election of officers took place. George M. Harrison was the only person nominated for the office of Chief Executive. He was elected to that office by 1704 votes out of a total of 1803.
 
 
 3
 Plaintiffs allege that Resolution No. 611 is a nullity because, though effectively amending the constitution, it was not adopted in accordance with the procedure provided for amendment of that instrument but instead was adopted without due notice or full disclosure.
 
 
 4
 Plaintiffs brought this action under Titles I[2] and V[3] of the Labor-Management Reporting and Disclosure Act, seeking a declaratory judgment of the invalidity of Resolution No. 611 and an injunction against its taking effect. The district court dismissed the complaint. We affirm the decision of the district court.
 
 
 5
 Though the plaintiffs have briefed their claim under Title I, in their oral argument they did not mention that part of the statute. Presumably they were moved by the intervening decision of the Supreme Court in Calhoon v. Harvey, 85 S.Ct. 292 (1964), to abandon their reliance on Title I. That reliance was based upon the allegation that the delegates to the convention 'were not accorded with respect to Resolution No. 611 the same opportunities and advantages which they enjoyed with respect to all of the other proposed amendments * * *' That this type of irregularity does not come within the reach of Title I is made clear in the opinion in Calhoon v. Harvey, supra. See also Robins v. Rarback, 325 F.2d 929 (2d Cir. 1963). There is no claim that any delegate was denied an equal right to vote or participate. There is nothing in Title I which purports to guarantee that all proposed amendments to the union constitution will be accorded the same procedural treatment.
 
 
 6
 Plaintiffs' principal resort is to Title V of the Act. But plaintiffs' reliance on Title V is defeated at the outset by failure to comply with the procedural requirements of Section 501(b). Under that Section plaintiffs can bring an action only if 'the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so * * *.' We hold that this provision of the statute is mandatory and that its requirements cannot be met by anything short of an actual request. An allegation of the futility of such a request will not suffice. Together with the further requirement of a showing of good cause and of securing court permission to proceed, the provision requiring a request is clearly designed to protect union officials from unjust harassment. If it is to serve the purpose for which it was included, it must be given full effect. Since the plaintiffs do not allege that they have made the prescribed request, they are not in a position to bring the present action.
 
 
 7
 What we have said is sufficient to defeat the action and to support the result reached in the district court. However, the defense which we have sustained to the claim under Title V is in the nature of a defense in abatement. The plaintiffs could now make the request as provided by Section 501(b) and if no action was taken within a reasonable time, they could, in effect, reinstitute the present suit. Since it is clear to us that the plaintiffs have no valid claim for relief under Title V, we prefer to rest our decision on the broader basis which will constitute a complete bar to any action under that Title.
 
 
 8
 The supposed violations of Title V are set forth in the complaint as follows:
 
 
 9
 'In all of the circumstances herein described defendants and some members of the Grand Executive Council violated their duty as fiduciaries under Section 501(a), Title V, of the Act of 1959 in that (i) they and defendants deliberately suppressed needed information and knowledge respecting Resolution No. 611 before it was voted upon; and (ii) they rushed the Resolution through in disregard of custom and of Article 13, Section 27, of the defendant's Constitution; and (iii) defendant George Harrison notably lacked that candor and honesty and that respect for his duty as trustee which the Statute imposes and which the Brotherhood members had a right to expect from a person so benefited at Union expense and so advantaged by respected and controlling Union office.'
 
 
 10
 In the very recent case of Gurton v. Arons, 339 F.2d 371 (2d Cir., 1964), we said:
 
 
 11
 'A simple reading of (Section 501) shows that it applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them.'
 
 
 12
 In support of our view as to the coverage of Section 501 we called attention to the legislative history and to the law review articles cited in Guarnaccia v. Kenin, 234 F.Supp. 429, 442-443 (S.D.N.Y., aff'd sub nom. Gurton v. Arons, 339 F.2d 371 (2d Cir., 1964).
 
 
 13
 The charges of the plaintiff refer to the voting on Resolution No. 611 and not to the mishandling of any money or property of the Union. The complaint is that the membership was not given all the information it needed for voting intelligently and that the Resolution was rushed through the convention. There are also allegations that Harrison's conduct fell short of that required of him. These claims fail to allege anything which would constitute a violation of Title V.
 
 
 14
 We find it unnecessary to decide whether plaintiffs have set forth a claim cognizable in whole or in part under Title IV of the Act, since suit under Title IV can be instituted only by the Secretary of Labor.
 
 
 15
 The decision of the district court dismissing the complaint is affirmed.
 
 
 
 [1]
 The text of Resolution No. 611 is as follows:
 'Whereas, George M. Harrison has expressed a desire to retire from the Office of Grand President of our Brotherhood after having served in our Organization for approximately forty-five years, thirty-five of these years as Grand President, and during all of these years he has been held in high esteem and great respect, his integrity has never been questioned.
 'He has rendered outstanding service and given exemplary leadership to our Organization. We enjoy a position of pre-eminence with great prestige-- both National and international-- and we are known for the integrity and responsibility and ethical standards, practiced and observed by our Brotherhood, throughout the American Labor Movement. Our progress in improving the economic and social conditions of our members and the gains achieved generally in their behalf places us in a position of leadership in our segment of international Labor.
 'The participation of George M. Harrison in the many private and governmental agencies and organizations concerned with economic, social and educational matters and international affairs has redounded to the interest and benefit of our Brotherhood, its members and Labor in general, and
 'Whereas, the retirement of George M. Harrison from the office of Grand President at this time would deprive the Brotherhood and its members of his vast knowledge, experience, leadership and prestige gained from a background of forty-five years in the Labor Movement and national and international affairs, this would be a tremendous loss to the Brotherhood and would be contrary to the best interests of our members; and
 'Whereas, it is the desire and intent to assure to the Brotherhood the continuing services of George M. Harrison, therefore be it
 'Resolved, That the office of 'Chief Executive' is hereby created for that purpose, effective as of July 1, 1963, and subject to the election procedures of the Constitution, and be it further
 'Resolved, that the 'Chief Executive' is empowered and authorized to exercise at any time he deems necessary any or all of the duties and prerogatives set forth in the Constitution, Statutes for the Government of Local Lodges and the Protective Laws vested in the Grand President and his decisions shall be for all purposes contained in the Constitution, Statutes and Protective Laws as though they were the decisions of the Grand President.
 'Salary to be paid to George M. Harrison as 'Chief Executive' shall be the same as he now receives as Grand President.'
 
 
 [2]
 The relevant part of Title I provides in Section 101(a)(1), 73 Stat, 522 (1959), 29 U.S.C. 411(a)(1) (Supp. V, 1964):
 'Equal Rights.-- Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.'
 
 
 [3]
 The relevant part of Title V provides in Section 501, 73 Stat, 535 (1959), 29 U.S.C. 501 (Supp. V, 1964):
 '(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
 '(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allow a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.
 '(c) Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.'