William J. HEAD, Plaintiff-Appellant,

v.

BROTHERHOOD OF RAILWAY, AIR-
LINE AND STEAMSHIP CLERKS,
FREIGHT HANDLERS, EXPRESS
AND STATION EMPLOYEES
(BRAC), et al., Defendants-Appellees.

No. 532, Docket 74–2087.

United States Court of Appeals,
Second Circuit.

Argued Jan. 23, 1975.

Decided March 7, 1975.

David J. Fleming, New York City
(William J. Donlon, Rosemont, Ill., Reil-
ly, Fleming & Reilly, New York City, on
the brief, Paul G. Reilly, Jr., New York
City, of counsel), for defendant-appel-
lees.

John T. Collins, Buffalo, N. Y. (Collins,
Collins & Dinardo, Buffalo, N. Y., on the
brief), for plaintiff-appellant.

Before LUMBARD, HAYS and MUL-
LIGAN, Circuit Judges.

HAYS, Circuit Judge:

■ This is an appeal from a judg-
ment of the United States District Court
for the Western District of New York
dismissing an action brought against a
union and its officers under § 501 of the
Labor-Management Reporting and Dis-
closure Act, 29 U.S.C. § 501 (1970). The
district court held that the plaintiff
failed to state a cause of action upon
which relief could be granted.[1]

We affirm.

1. Although the district court did not reach the
issue, it is clear that § 501 does not provide
for an action against a labor organization but
only for such an action against an "officer,

agent, shop steward, or representative" of a
labor organization. 29 U.S.C. § 501(b) (1970).

The individual defendants claim that in ad-
dition to the ground relied upon by the dis-

## I.

The appellant is an Express Division General Chairman of the Brotherhood of Railway, Airline and Steamship Clerks ["BRAC"]. The Express Division represents those BRAC members who are employed by REA Express, formerly the Railway Express Agency. For various reasons membership in the Express Division has declined in recent years from a peak of between 40,000 and 50,000 to a 1974 total of 23,000, of which only 13,000 were active employees of REA.

Despite the drop in membership, the Express Division continued, until recently, to operate through 120 Local lodges, many of which faced increasing difficulties in carrying out their functions. In response to this problem, the 1971 Quadrennial Convention of BRAC adopted Resolution No. 201.[2] The resolution established a Committee on Structure and authorized it to investigate the possibilities of improving the union's structure and to recommend structural changes to the Executive Council. The Council was authorized to institute changes on a temporary, experimental basis, if the "involved units" accepted them. All such changes would be subject to approval by the 1975 Convention.

At a meeting in May, 1974, the National Association of Express General Chairmen, of which appellant was a member, adopted a restructuring proposal for the Express Division and submitted it to the Structure Committee. The proposal called for the elimination of the local lodges and the institution of a unified, nationwide Express Division system. Area representatives would replace the local lodges, which would be

---

trict court, they are entitled to dismissal because the plaintiff did not comply with the procedural requirements of § 501(b) that he request the union to bring the action and that he obtain leave of court before bringing suit. We have held that those requirements must be given "full effect." Coleman v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, 340 F.2d 206, 208 (2d Cir. 1965). See Cassidy v. Horan, 405 F.2d 230, 232 (2d Cir. 1968). In view of our disposition of this case, we need not reach the question of plaintiff's noncompliance with § 501(b).

2. Resolution No. 201 provides, in part:

WHEREAS, a Committee on Structure be authorized by the 1971 Convention and be charged with the responsibility of recommending specific changes in structure to the 1975 Convention, and

WHEREAS, Such task cannot be effectively undertaken unless the Committee on Structure is specifically authorized as to the scope of its functions, operations and financial resources, and

WHEREAS, In order for the Committee on Structure to effectively carry out its duties, it is imperative that experimentation be allowed to test the desirability of proposed improvements in the Brotherhood structure.

THEREFORE, Be It Resolved, That the 1971 Convention authorize the Committee on Structure as follows:

1. Functions. The Committee shall be invested with the specific responsibility to investigate the forms and types of union structure in existence today; to solicit and receive suggestions for improvement of our present structure from our membership and officers on a local, system, and national level, and to report to the next regular BRAC Convention with specific recommendations, based on its studies, for improvements of the basic structure of the BRAC.

2. Operations. The Committee shall hold meetings, hearings, special investigations and any other related activities as may be deemed appropriate by the Chairman or by a majority of the members of the Committee.

3. Finances. The Grand Lodge will absorb the travel, per diem, and other appropriate expenses as may be incurred by the Committee in the pursuit of its assigned duties and responsibilities.

Therefore, Be It Further Resolved, That such Committee on Structure be authorized by Convention Action to recommend to the Executive Council, on a temporary experimental basis, structural changes in subordinate units of the BRAC, which can only be effective if the involved units accept these changes. Subordinate units shall also have the right to propose structural changes which, if approved by the Committee and the Executive Council, may be implemented on an experimental basis; and

THEREFORE, Be It Further Resolved, That any successful experiment cannot be automatically accepted as a permanent change in the structure unless it is within the framework of the Constitution and approved by the next regular Convention

required to forward their funds to the Express Division offices. The plan was subsequently approved by the Structure Committee and the Executive Council and has gone into effect. Since the new structure must still be approved by the 1975 Convention before it becomes permanent, the secretary-treasurer of the newly formed Express Division is keeping the funds from the local lodges separate from the general treasury, so that anything remaining can be returned to them, in proportion to what they contributed, should the Convention disapprove of the new system.

## II.

■ In his complaint, appellant alleged that the adoption and implementation of the restructuring plan violated the union's constitution, as well as the terms of Resolution No. 201. He argued before the district court and again here that any plan abolishing the local lodges must be approved not by the Express Division General Chairmen but rather by the lodges themselves or by the entire 1975 Convention and that absent such approval, the restructuring, even on a temporary basis, should be enjoined. The district court held that under the decisions of this Circuit, appellant had failed to state a claim under 29 U.S.C. § 501. We agree.

Section 501(a) provides that it is the duty of the officers and agents of a labor organization

"to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder . . .." 29 U.S.C. § 501(a) (1970).

In Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964), and again in Coleman v. Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, 340 F.2d 206, 209 (2d Cir. 1965), we held that § 501

"applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them."

In the instant case, Head is charging BRAC officials with improperly tampering with the union's structure. Although he envisions the possibility that union funds will be mishandled in the future as a result, he does not allege any present wrongdoing of that type. We therefore hold that Head's complaint does not state a cause of action under § 501.

In an attempt to satisfy the language of § 501 and to distinguish *Gurton* and *Coleman*, appellant stresses the fact that under the restructuring plan, the funds of the local lodges were transferred to the central Express Division treasury and certain BRAC officials received increases in salary. However, it is clear that the gravamen of appellant's complaint is the decision to restructure BRAC so as to eliminate the local lodges. The fact that funds were transferred from the now defunct lodges to the Express Division is of secondary importance. Any restructuring which entails a significant shift in responsibility from one unit to another inevitably leads to a shift in funds. Furthermore, in *Coleman* the allegedly improper creation of the office of "Chief Executive," with a salary of $60,000 a year, undoubtedly had an effect on union funds similar to some of the effects claimed here. We nevertheless held in *Coleman* that the complaint was insufficient because it centered on improper voting procedures and not on the present mishandling of union funds. We likewise hold in this case that the complaint is aimed at the procedures through which the Express Division was restructured and not at misconduct by union officials in connection with union money.

### III.

Finally, appellant cites a number of cases from other circuits in support of the proposition that § 501 is applicable to the facts alleged in his complaint. See Pignotti v. Local # 3 Sheet Metal Workers' Int. Ass'n, 477 F.2d 825 (8th Cir.), cert. denied, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); Sabolsky v. Budzanoski, 457 F.2d 1245 (3d Cir.), cert. denied, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972); Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963). Insofar as these cases differ with *Gurton* and *Coleman* on the scope of § 501, we decline to follow them.[3] However, even these cases are not necessarily supportive of appellant's position. For example, in Johnson v. Nelson, supra, the plaintiffs claimed that the union president and treasurer violated their fiduciary duties by refusing, for personal reasons, to sign checks for payments which had been duly approved by the membership. See 325 F.2d at 653. Similarly, in Sabolsky v. Budzanoski, supra, 457 F.2d at 1248, the complaint alleged that union officers had expended funds to maintain 37 "rotten borough" locals; and in *Pignotti*, supra, 477 F.2d at 827–30, the complaint charged union officials with wrongfully authorizing deductions from members' paychecks, with the amounts deducted to be paid into a union pension fund. In all these instances, the actual misuse of union funds for personal or political reasons was an essential element of the case.

### IV.

We conclude that the conduct attacked in this case is not within the intended scope of § 501. The defendants have been charged not with misappropriating or misusing union funds but rather with

restructuring the union. It is not for the courts to mediate such disputes. See Gurton v. Arons, supra, 339 F.2d at 375.

Affirmed.

---

**3.** The legislative history cited in *Pignotti*, supra, 477 F.2d at 832–35, does not convince us that § 501 was intended by Congress to cover union abuses having nothing to do with money or property. While it is true that § 501 as enacted is somewhat more explicit in its detail than the corresponding provision originally passed by the Senate, see Section 610 of S. 1555, 86th Cong., 1st Sess. 61–62 (1959), the final bill nevertheless defines the fiduciary duties of union officers solely in terms of their treatment of the "money and property" of the union and their financial dealings vis-à-vis the union.