Joseph C. **JOHNSON, Jr., individually and on behalf of the members of CSEA Local 010 and Agency Shop Fee Payers assigned to CSEA Local 010, Plaintiff,**

v.

William L. **McGOWAN, Individually and as President of CSEA, Inc., Local 1000 AFSCME, AFL–CIO, Barbara Fauser, Individually and as Treasurer of CSEA, Inc., Local 1000, AFSCME, AFL–CIO, David Stack, Individually and as Comptroller of CSEA, Inc., Local 1000, AFSCME, AFL–CIO and Cathy Bruno, Supervisor of Accounts, CSEA, Inc., Local 1000, AFSCME, AFL–CIO and the Civil Service Employees Association, Inc., Local 1000, American Federation of State, County and Municipal Employees, AFL–CIO, Defendants.**

No. 83 Civ. 3129.

United States District Court,
E.D. New York.

Nov. 2, 1983.

---

John C. Macklin, New York City, for plaintiff.

Roemer & Featherstonhaugh, Albany, N.Y., Mailman & Ruthizer, P.C., Theodore Ruthizer, New York City, for defendants.

## MEMORANDUM AND ORDER

### GLASSER, District Judge:

Plaintiff, the elected president of Local 010 of the Civil Service Employees Association ("CSEA"), seeks leave of this Court to file an action, pursuant to § 501 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501, against defendants, executive officers of CSEA, Inc. Essentially, the complaint alleges that the parent union has failed to allocate properly to Local 010 funds collected from agency fee shop payers, as required by the Constitution and Bylaws of CSEA. The issue before the Court is whether plaintiff has shown good cause for seeking redress under § 501. For the reasons stated herein, leave to file the complaint is granted.

### Facts

Agency Shop Fee Payers are government employees who are not members of the union, but who nevertheless have a portion of their salaries withheld and transmitted to CSEA, Inc. The Bylaws of the Statewide CSEA Constitution state that each union local shall receive from the CSEA Treasurer 25% of the agency shop fees collected from the employees in such locals after appropriate reductions.[1] The plaintiff alleges that this refund was calculated in a manner that deprived the local of $30,-000 over a three year period. He further alleges that he has exhausted his internal union remedies pursuant to 29 U.S.C. § 501(b) by notifying the union leadership of his complaint and receiving no response for four months. Defendants claim that even if they acted in violation of the CSEA Constitution, such a violation would not be actionable under § 501.

Section 501 imposes on officers and representatives of local unions a "fiduciary responsibility" to the union "to hold its money and property solely for the benefit of the organization and its members and to manage, invest and expend the same in accordance with its constitution and bylaws ... to refrain from dealing with such organization as an adverse party ... and from holding or acquiring any personal or pecuniary interest which conflicts with the interests of such organization...." 29 U.S.C. § 501(a).[2]

---

1. Bylaws to CSEA Constitution Art. IV, Sec. 3:
   Section 3. Refund and Reimbursement.
   (a) Refunds to Locals. Each duly organized local of the Association which has complied with all of the provisions of the mandated Model Local Constitution and this Constitution and By-Laws shall receive from the Treasurer an annual payment of twenty-five per-centum (25%) of the membership dues and twenty-five percentum (25%) of the agency shop fees collected from the employees in such locals after the net per capita payment to AFSCME, based on the June 1st audit, has been deducted. The expense of the delegates to regular or special meetings of the Association shall be paid by the local from such funds as hereinafter provided.

2. Section 501(a) states in full:
   Sec. 501(a). The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
   29 U.S.C. § 501(a).

Section 501(b) creates a federal cause of action for union members against officers who violate the duties outlined in § 501(a) but only if the union fails to seek appropriate relief within a reasonable time and only after leave of court is obtained "upon verified application and for good cause shown." 29 U.S.C. § 501(b).[3] The question before this Court concerns the scope of this fiduciary duty. Defendants maintain that case law in this Circuit, as supported by the legislative history of the LMRDA, establishes that the duty prescribed by the Act is violated only where union officials utilize their trust positions to deprive the union of funds and to achieve personal financial benefits. A closer reading of the case law and legislative history demonstrates, however, that the fiduciary duty is wider in scope, and encompasses the violations alleged here.

*Discussion*

In *Morrissey v. Curran*, 650 F.2d 1267 (2d Cir.1981), a suit under § 501 was found to be cognizable where plaintiff alleged a breach of fiduciary duties by defendant union officers in authorizing and receiving various forms of improper payments and excessive compensation. The crux of the *Morrissey* opinion was that authorization of the officers' activities by the union did not prevent challenge under § 501, since the activities were deemed to be unreasonable uses of union funds for the personal benefit of the officers. *Id.* at 1274. According to the court, authorization cannot be used "to shield the very acts that prompted the legislation, misappropriation and abuse of union funds by officers for their personal benefit." *Id.* at 1273–74,

*citing McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976).

In the present suit, defendants cite the language in *Morrissey* and *McNamara, supra*, for the proposition that § 501 should be limited to those cases in which officers have personally benefitted at the expense of the union. But these opinions can more readily be understood as employing the "personal benefit" principle to carve out an *exception* to the general defense of union authorization. Where, as in the present case, the authorization defense is absent, § 501 coverage would still be available. Support for this reading is found in *McNamara*. There, a union member was denied leave to file a § 501 suit against union officers who, in accordance with general resolutions and the union constitution, authorized and contributed union funds to political candidates and social causes. The Seventh Circuit accepted the defendants' contention that "so long as an officer expends funds without personal gain in compliance with [union] standards, there is no breach of any duty under § 501." 522 F.2d at 1163. The court found that "[s]ection 501's language and the legislative history of the Landrum-Griffin Act make it clear that Congress placed primary reliance on union rules and policies to establish the scope of a union representative's fiduciary obligations." *Id.*

The *McNamara* holding is predicated upon two conditions, namely, compliance with the union constitution and resolutions and the absence of personal gain. It can

---

**3.** Section 501(b) states in full:

(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover

damages or secure any accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.

be argued that a failure to meet either one of these conditions would support a finding of breach of fiduciary duty. Such a rule has been embraced by several legal scholars and finds some support in the case law. *See Wood v. Journeymen Barbers, Hairdressers, etc.,* 454 F.2d 1347, 1355 (7th Cir. 1972) ("Failure to meet [pension fund] requirements is a failure to expend monies in accordance with a resolution adopted by a governing body under the Union's Constitution ... and therefore clearly in breach of the fiduciary duties in Section 501(a))"; *Morrissey v. Curran,* 302 F.Supp. 32, 35 (S.D.N.Y.1969), *aff'd in part, rev'd in part,* 423 F.2d 393 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970) (union officers and pension trustees found to violate § 501 for including non-officer employees within coverage of union pension fund, in contravention of union constitution); J. Bellace & A. Berkowitz, The Landrum-Griffin Act—Twenty Years of Federal Protection of Union Member's Rights, 293–95 (1979) (arguing in favor of a rule whereby violation of the union constitution would be a *per se* breach of fiduciary duty); Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va.L.Rev. 195, 228 (1960) (employing union constitution and resolutions as standard for measuring the scope as of § 501's fiduciary duty). Moreover, it is suggested by the language of the statute itself. 29 U.S.C. § 501(a).

Admittedly, the case law in this Circuit has exhibited a trend toward limiting the scope of the fiduciary duty in § 501. *See, e.g., Head v. Brotherhood of Small Ry. Clerks,* 512 F.2d 398 (2d Cir.1975); *Gurton v. Arons,* 339 F.2d 371 (2d Cir.1964). While extending § 501's coverage to the case before it, the court in *Morrissey, supra,* cited

the long-standing principle of minimum interference with union affairs and recognized "that the Act does not give courts a license to interfere broadly in internal union affairs." 650 F.2d at 1273, *citing Gurton v. Arons, supra,* 339 F.2d at 375. But neither *Morrissey* nor the other opinions in the circuit that have limited the scope of § 501 have precluded § 501 jurisdiction where, as here, the union constitution has been violated. The restrictive language appearing in dicta could arguably be applied to the case at hand, but this would be inappropriate in light of the questionable analysis of legislative history that was made in these cases.

It is undisputable that, in enacting § 501 in 1959, Congress was primarily concerned with combatting the looting of union assets by officers and representatives. At hearings conducted by Senator McClellan Congress learned of repeated instances in which union officials abused their positions of trust to gain personal financial benefits. *See* 105 Cong.Rec. 6523–30 (1959). In fact, Senator McClellan's remarks concerning the Senate's proposed version of § 501[4] have been cited in this Circuit to justify a narrow reading of the statute. *See, e.g., Gurton v. Arons, supra,* 339 F.2d at 375 (approving of the district court's analysis, *Guarnaccia v. Kenin,* 234 F.Supp. 429, 442 (D.C.N.Y.1964)).[5]

It was not the bill proposed by Senator McClellan that was enacted by Congress, however, but rather the House version sponsored by Congressman Elliot. The report accompanying the House bill stated that "the committee bill is broader and stronger than the provisions of S. 1555 [the Senate version] which relate to fiduciary responsibilities.... S. 1555 applied the fiduciary principle to union officials only in

---

4. The fiduciary duty proposed by Senator McClellan and adopted by the Senate as part of S. 1555 stated that a union representative "shall, with respect to any money or other property in his custody or possession by virtue of his position as such officer, agent, or representative, have a relationship of trust to any such labor organization and the members thereof...." S. 1555, 86th Cong., 1st Sess. § 610 (1959).

5. Senator McClellan's remarks could be read, however, to justify assertion of jurisdiction in the case at hand. The Senator argued during the Senate debate that union officials should only utilize union funds for legitimate union purposes, and these purposes were characterized as "purposes which were proper under the [union's] constitution." 105 Cong.Reg. 6529 (1959).

their handling of 'money or other property'.... [T]he committee bill extends the fiduciary principle to all the activities of union officials and other union agents or representatives." H.R.Rep. No. 741, 86th Cong., 1st Sess. 81 (1959), reported at 2 U.S.Code Cong. & Admin.News, 86th Cong., 1st Sess. 1959, pp. 2318, 2480. Representative Elliot explained further that his committee "wrote a comprehensive statement of the fiduciary duties of union officers." 105 Cong.Rec. 15,549 (1979). In light of these remarks, and Congress' rejection of the Senate bill in favor of the House version, a reading of § 501 that does not limit its protection to cases of union looting is warranted.

Beyond these remarks, the legislative history gives little guidance as to the applicability of § 501 to particular cases, but a close reading of the statute suggests that jurisdiction is especially appropriate in this case. The statute instructs that the fiduciary duties of union officers should be determined by "taking into account the special problems and functions of a labor organization." 29 U.S.C. § 501(a).[6] One problem that is unique to labor organizations is the relationship between union locals and the parent organization. Disagreements between parents and locals are not necessarily susceptible to just resolution via internal union mechanisms, for the parent may exert control sufficient to suppress the interests of the local's membership. *See generally Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (discussing a variety of disputes between international union and its local). This would be the case here, assuming that the allegations in Johnson's complaint are true. The constitutional violations that are alleged here might be deemed innocuous in other cases, but they have a more profound

impact within a union environment. Thus, when the "special problems and functions of a labor organization" are taken into account, I find little difficulty in concluding that plaintiff's complaint alleges a breach of fiduciary duty in violation of § 501.

In granting the plaintiff leave to file his § 501 complaint, I make no findings on the merits of his allegations of fiscal impropriety. Substantial questions remain as to whether defendants' actions were in fact violative of the union constitution and, if so, whether a remedy should be accorded under § 501. I conclude only that, pursuant to the requirements of 29 U.S.C. § 501(b), plaintiff has shown "good cause" for filing his § 501 action.

SO ORDERED.

---

6. The clause was intended in large part to alleviate fears of union leaders that their fiscal policies would be subjected to the same type of scrutiny applied to corporate fiduciaries, who are expected to maximize profits. Unlike corporations, unions are designed to achieve social and political goals, in addition to monetary goals. Different standards must, therefore, be applied to measure the propriety of their activities. *See* Clark, The Fiduciary Duty of Union Officials Under Section 501 of the CMRDA, 52 Minn.L.Rev. 437, 445–46 (1967).