Carlos **GUZMAN**, individually and on behalf of the members of Local 32B–32J of the Service Employees International Union, Plaintiff–Appellee,

v.

Gus **BEVONA**, individually and as President of Local 32B–32J, Service Employees International Union, Nicholas Alvarez, Joseph J. Baumann, John Bevona, Kyle Bragg, Stanley Busti, Ernesto Castro, Robert Currenti, Anthony DeJesus, Joseph Dumlao, Andrew Dunlea, Juan Goicoechea, Thomas Gray, Serge Jean-Jacques, Joseph LaRosa, Charles Lee, Peter Martin, Kevin McCullough, Yalmen Mergen, Donald Mumm, Marie Nurse, Anthony Poccio, Alonzo Ramirez,

Woden Rodriguez, Danielle Sistrunk, John J. Sweeney and Colin Villacis, individually and as officers of and members of the Joint Executive Board of Local 32B–32J, Service Employees International Union, Defendants–Appellants.

No. 1367, Docket 95–9090.

United States Court of Appeals, Second Circuit.

Argued April 30, 1996.

Decided July 25, 1996.

Irvin Rochman, Rochman, Platzer, Fallick, & Sternheim, New York City, Franklin K. Moss, New York City (Amy Trakinski, Jean Kelly, Spivak, Lipton, Watanabe, Spivak & Moss, on the brief), for defendants-appellants.

Wayne N. Outten, New York City (Jack A. Raisner, Teresa L. Scott, Lankenau Kovner & Kurtz, New York City, on the brief), for plaintiff-appellee.

Before: NEWMAN, Chief Judge, CABRANES, Circuit Judge, and CARTER,* District Judge.

JON O. NEWMAN, Chief Judge:

This case presents several issues regarding the scope of liability of a union and its officers under the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401–531 (1994). Carlos Guzman brought suit on behalf of himself and his union, Local 32B–32J ("the Union"), against the defendants, all officers of the Union, after he discovered that the defendants had placed him under surveillance to determine whether his criticism of the Union and the defendants had been fueled by anti-Union management. The suit also complained of a threatening letter regarding Guzman's comments sent to Guzman by the Union's attorney. A jury awarded Guzman $100,000 for impairment of his free speech rights, and the Court ordered all the defendants to repay to the Union treasury the $19,343 expended for the surveillance. The Court also enjoined all the defendants from further violations of Guzman's rights under the Act.

We conclude that the judgment should be affirmed, though with a slight modification to exempt from the injunction those defendants who had retired from all positions within the Union.

## Background

In early 1991, Guzman began distributing literature criticizing the Union leadership and calling for a decrease in dues and officers' salaries. Bevona, suspecting that Guzman was aiding management's efforts to destabilize the Union in upcoming contract negotiations, hired APB Investigations, Inc. to conduct surveillance of Guzman's home. In March Guzman noticed the investigators watching him and fled his home in fear. On the orders of Bevona, the investigators continued surveillance of Guzman's wife.

Bevona asked the Union's attorney, Ronald Raab, to send a letter responding to Guzman's criticism of the Union and the defendants. The letter closed with the following sentence: "Dissemination of false information will make you vulnerable to legal action by the Union and its officers."

Both Guzman's open letter to Bevona complaining about high salaries and dues and the Raab letter responding to it were read to the Union's Joint Executive Board. The board members then approved the ongoing surveillance of Guzman. In June, after news stories had reported on the harmful effects of the surveillance on Guzman, the board met again. At this meeting the letters from Guzman and his attorney charging a violation of the LMRDA based on the surveillance and calling for corrective action were read. The defendants again approved the surveillance.

Based on the surveillance and the Raab letter, Guzman brought suit against the defendants, in both their individual and official capacities, for $1.5 million in damages, claiming breach of his free speech rights guaranteed by section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) (1994). He also asserted on the Union's behalf a claim of breach of fiduciary duty under section 501(a) of the

* Honorable Robert L. Carter, of the United States District Court for the Southern District of New York, sitting by designation.

LMRDA, 29 U.S.C. § 501(a) (1994), and requested that the defendants be ordered to repay to the Union the $19,343 spent on the surveillance. Finally, Guzman requested injunctive relief against further violations of the Union constitution under section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1994).

In a court conference in March 1992, the defendants questioned the propriety of permitting Guzman to seek damages against the Union under section 101 by suing the officers in their official capacities while also bringing an action on behalf of the Union under section 501. In response, Guzman withdrew his claim for damages against the Union by amending his complaint to sue the officers only in their individual capacities.

In 1992, the defendants' attorney advised Guzman's attorney that, by dropping the claim against the individual defendants in their official capacities, Guzman's attorney appeared to have relinquished the right to recover attorney's fees under the common benefit rule of *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In March 1995, in a ruling on the parties' cross-motions for partial summary judgment, Judge Patterson accepted this proposition, but permitted Guzman to file a third amended complaint, renewing his claim against the individual defendants in their official capacities.

In the March 1995 ruling, the Court noted that, although unions may file civil suits against members for libelous or slanderous statements, section 609 of the LMRDA prohibits any disciplinary action against members for exercising their right to free speech about union issues. The Court denied summary judgment for the defendants as to the Raab letter because it found that an issue of material fact existed as to whether Guzman understood the last sentence of the letter to threaten union discipline. At trial, the Court instructed the jury to find for the plaintiff if it found that a reasonable union member would have understood the Raab letter to threaten disciplinary action.

On the section 101(a)(2) claim, the jury found that the surveillance and the Raab letter were authorized by Bevona in his individual and official capacities, and by the oth-er defendants only in their official capacities. The jury also found that the surveillance had the effect, but not the purpose, of inhibiting Guzman's free speech rights, and that the Raab letter had both such purpose and effect. The jury awarded $100,000 in damages, and the Court ordered Bevona and the Union to pay Guzman this sum.

In ruling on the equitable claim under section 501(a), the District Court found that both the surveillance and the Raab letter had both the purpose and the foreseeable effect of inhibiting Guzman's free speech rights. The Court further held that all the defendants had acted for their own "personal and political benefit" in ordering and ratifying the surveillance and the Raab letter, and that the use of Union funds for the surveillance was manifestly unreasonable. The Court ordered that all the individual defendants repay the Union for the cost of the surveillance. The Court also enjoined the defendants from (a) conducting any further surveillance of Guzman or his family, (b) threatening any legal action against Guzman or his political supporters for exercising their free speech rights, and (c) engaging or directing, or inciting others to engage in actions that have the purpose or reasonably foreseeable effect of inhibiting Guzman's exercise of his free speech rights.

Since the suit was filed, Guzman has not been threatened by any of the defendants. However, in June 1995, less than two months before trial, several shop stewards assaulted Guzman outside a shop stewards' meeting and threw his leaflets into the street. The defendants took no disciplinary action against these individuals.

## Discussion

### I. Section 501

Section 501(a) of the LMRDA requires union officers "to hold [the union's] money and property solely for the benefit of the organization and its members." 29 U.S.C. § 501(a). Section 501(b) gives union members a right to sue on behalf of the union. Although union officers will generally be guilty of breach of trust under section 501 only when acting beyond their authority, *see*

105 Cong. Rec. 17900 (1959) (remarks of Sen. Kennedy) *quoted in McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976), this Court has held that even authorized conduct may violate section 501 if (a) the officer personally benefited from the expenditure and (b) the expenditure was "manifestly unreasonable." *See Morrissey v. Curran*, 650 F.2d 1267, 1274 (2d Cir.1981).

A. *Misuse of union money and property.* Defendants challenge the District Court's holding, as to the non-jury equitable claims, that the officers breached their fiduciary duties by ordering and authorizing the surveillance. They argue that Guzman's suit primarily sought damages for the initiation of the surveillance rather than for the expenditure of "money and property" necessary to conduct it.

■ This Court has strictly interpreted the scope of the fiduciary duty imposed on union officers by section 501(a), limiting recovery to claims that centrally challenged misuse of union "money and property" and rejecting those that centered on other breaches of trust that only incidentally affected union funds. *Compare Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir.1964), *with Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252 (3d Cir.), *cert. denied*, 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972). Even under this standard, however, the conduct challenged in this case involved misuse of union money and property sufficient to find the perpetrators liable under section 501.

Guzman's claim is distinguishable from those in other cases, cited by defendants, in which we have held that the conduct complained of by union members did not centrally involve the misspending of union money or property. *See Head v. Brotherhood of Railway, Airline and Steamship Clerks*, 512 F.2d 398 (2d Cir.1975) (dismissing section 501 suit that principally challenged restructuring of union, although restructuring involved salary increases for some officials and some shift in funds from local lodges to division offices); *Coleman v. Brotherhood of Railway & Steamship Clerks*, 340 F.2d 206 (2d Cir.1965) (rejecting section 501 suit challenging procedures used to vote new job for union presi-

dent at annual salary of $60,000); *Gurton v. Arons*, 339 F.2d 371 (2d Cir.1964) (rejecting section 501 suit challenging requirement that all members register to vote at union's offices during working hours). *Head* considered the "gravamen" of the complaint to be the restructuring plan, not the incidental effect on union funds. *Head*, 512 F.2d at 400. *Head* also noted that *Coleman* had considered the complaint insufficient "because it centered on improper voting procedures and not on the present mishandling of union funds." *Id.*

In contrast to these cases, each of which primarily challenged improper procedures rather than expenditures of union funds, Guzman complains that the officers breached their fiduciary duties to the Union by spending $19,343 for an impermissible purpose. Guzman does not allege that the funds were authorized in an impermissible manner; rather, the "gravamen" of Guzman's complaint is the misuse of the money to order surveillance of a loyal but outspoken union member. Such abuse of union funds directly violates the fiduciary duty imposed on union officers by section 501(a). The fact that Guzman also objects, in his section 101(a) claim, to the use to which the officers put the allegedly unlawful expenditure does not transform his section 501 claim about misuse of funds into a complaint about improper actions.

B. *Leave to sue.* Section 501(b) requires a union representative to obtain "leave of the court ... upon verified application and for good cause" before bringing suit for violation of section 501(a). Defendants argue that the District Court erred in granting Guzman leave to sue because his complaint did not involve the misuse of money or property. In light of our rejection of this argument on the merits of the section 501 claim, we also affirm the District Court's order granting Guzman leave to sue under section 501(b).

C. *Collateral estoppel effect of the jury's findings.* Defendants contend that the District Court's findings of section 501 liability must be reversed because the Court, in its findings of fact on that equitable claim, impermissibly rejected two facts found by the jury. First, on its verdict form, the jury indicated that it found that only Bevona was

acting in his individual as well as his official capacity; the jury specifically found that all the other individual defendants acted only in their official capacities and were not individually liable for damages. The District Court, however, in its revised findings of fact and conclusions of law, found that the other defendants acted "in their own personal and political interests" when they ratified and approved the expense for the surveillance.[1]

Second, the jury found that the defendants did not authorize the surveillance with the intent of inhibiting Guzman's free speech rights. In its findings of fact and conclusions of law summarizing the jury's verdict on the section 101 claim, the Court incorrectly stated that the defendants ordered and authorized the surveillance "with the purpose and foreseeable effect of inhibiting and stifling plaintiff's speech about union affairs." Two paragraphs later, in its findings and conclusions on the section 501 claim, the Court held that the defendants' actions in authorizing the surveillance were "manifestly unreasonable" and held the defendants liable.

■ Defendants are correct that the District Court, in trying the equitable claim, was not free to reject the jury's determination of facts essential to both the legal and equitable claims. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479, 82 S.Ct. 894, 900–01, 8 L.Ed.2d 44 (1962); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2d Cir.1988); *see also Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992).

■ Nevertheless, the District Court's error in rejecting the jury's findings does not require reversal of the Court's determination of section 501 liability. In the District Court, both the parties and the Court assumed that the defendants' potential liability should be assessed under the doctrine announced by this Court in *Morrissey v. Curran*, 650 F.2d 1267 (2d Cir.1981), which applies to union officers' acts that are authorized by the un-

ion's constitution, by-laws, and resolutions or by vote of the membership. If the *Morrissey* standard were applicable, Guzman could prevail on the section 501 claim only if he could show that the officers (1) personally benefitted from (2) manifestly unreasonable expenditures. Because the District Court here was bound by the jury's findings to rule that the defendants other than Bevona did not act for their own personal benefit, section 501 liability against those defendants would be improper under *Morrissey*. And because the Court was bound to rule that Bevona did not order the surveillance with unlawful intent, the Court's determination that the action was manifestly unreasonable, within the meaning of *Morrissey*, would at least be called into question.

■ *Morrissey*, however, does not apply to this case. On the section 301 claim, under which Guzman sought an injunction, the District Court determined that the defendants "contractually breached the terms of the Constitutions of the International and the Local" by taking actions that violated Guzman's statutory rights. Expenditures by union officers that violate the union's constitutions represent the classic case of breach of fiduciary duty under section 501. In the Congressional debates concerning section 501, Senator McClellan, one of the provision's principal advocates, said that the section would not reach legitimate union purposes, which he defined as "purposes which were proper under the [union's] constitution." 105 Cong. Rec. 6525 (1959), *quoted in McNamara v. Johnston*, 522 F.2d 1157, 1163 (1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Similarly, Senator Kennedy stated that union officers would not breach their fiduciary duties under section 501 where their actions were "not in conflict with the constitution and bylaws." 105 Cong. Rec. 17900 (1959), *quoted in McNamara*, 522 F.2d at 1163. *See also*

---

1. The Court's charge to the jury on the section 101 claim expressed the concept of individual liability in terms similar to those it used in its own conclusions of law on the section 501 claim. In its jury charge, the Court stated, "[i]f you find that any of the defendants took action *for their own personal benefit* which caused a violation of plaintiff's rights of free speech, any such defen-

dant would be liable individually" (emphasis added). The Court, in its revised findings of facts and conclusions of law, stated, "[b]y ratifying and approving the expense for the surveillance *in their own personal and political interests* and not in the interests of the Local, the defendants breach their fiduciary duties in violation of 29 U.S.C. § 501(a)" (emphasis added).

*Hood v. Journeymen Barbers International Union,* 454 F.2d 1347, 1355 (7th Cir.1972) (failure to comply with resolution adopted under union constitution was "clearly in breach of the fiduciary duties in Section 501(a)"). The officers' acts violated the Union's Constitutions and thus were unauthorized expenditures of the Union's money and property in breach of the officers' fiduciary duties. All the officers were properly held liable in their individual capacities under section 501 and ordered to pay the Union $19,343 as restitution.

## II. Section 101

A. *Purpose or effect of defendants' acts.* The District Court charged the jury that Guzman had to establish either that the defendants acted with the purpose of inhibiting Guzman's exercise of his free speech rights, or that the effect of the defendants' acts would be to inhibit Guzman's exercise of those rights. On their verdict form, the jurors found with respect to the surveillance that the defendants did not act with the purpose of inhibiting Guzman from speaking, but that this inhibition nevertheless was the foreseeable effect of the defendants' actions. Defendants argue, based on *Newman v. Local 1101, Communications Workers,* 570 F.2d 439 (2d Cir.1978) (*Newman I*), that the District Court should have instructed the jury that the defendants must have acted with an unlawful purpose to be liable under section 101.

In *Newman I,* we remanded the case to the District Court to consider whether the plaintiff, a union shop steward, had shown that he was decertified because he had publicly criticized union officials rather than because his political statements had prevented him from effectively performing the duties of a shop steward. Quoting from our earlier decision in *Schonfeld v. Penza,* 477 F.2d 899 (2d Cir.1973), we stated that a federal court would involve itself in union discipline matters only where the union action "was 'part of a *purposeful and deliberate* attempt by union officials to suppress dissent within the union.'" *Newman I,* 570 F.2d at 445–46 (quoting *Schonfeld,* 477 F.2d at 904) (emphasis added). Defendants cite this quoted language as support for their contention that liability under section 101 requires an unlawful purpose.

In *Newman I,* however, we went on to state that "the plaintiffs were required to show that the purpose was, *or [the] effect of decertifying Newman as a job steward would be,* to inhibit or stifle his exercise of free speech rights." *Newman I,* 570 F.2d at 446 (emphasis added). The Court stated this disjunctive requirement repeatedly: "[s]ince there is no showing that the decertification had any such purpose or effect, ..." *id.* at 446; "neither the purpose nor effect of the decertification was to chill or inhibit his free speech rights," *id.* at 447; "[t]he record is equally clear that neither the purpose nor the effect of decertifying Newman as a job steward was to discourage his exercise of his free speech rights as a member," *id.* at 448. Moreover, *Newman I* focused extensively on the lack of any demonstrable *effect* on Newman's speech, *id.,* in contrast to a case in which the union action had an obvious adverse effect on the plaintiff's exercise of his rights. *Id.* at 448 n. 6 (distinguishing *Salzhandler v. Caputo,* 316 F.2d 445 (2d Cir.), *cert. denied,* 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963)).

In *Schonfeld,* we confronted the issue of whether a plaintiff who pleads a violation of section 101 can then bypass the requirement that a union member file a complaint with the Secretary of Labor to allege a violation of Title IV of the LMRDA, governing the election of union officers. The apparent requirement of a "purposeful and deliberate attempt" by the union to inhibit its members in exercising their section 101 rights, on which defendants rely, was an attempt to keep the courts out of routine election disputes. *Schonfeld,* 477 F.2d at 904. Although *Newman I* quoted the *Schonfeld* "purpose" language without limiting it to its context of a union election dispute, the purpose requirement must be read as so limited in light of the repeated references in *Newman I* to an inquiry into purpose *or* effect. The District Court, on remand, read *Newman I* this way, *see Newman v. Local 1101, Communication Workers,* No. 77 Civ. 598, 1978 WL 1767 at *4–5 (S.D.N.Y. July 27, 1978), and we af-

firmed that decision in *Newman v. Local 1101, Communications Workers,* 597 F.2d 833 (2d Cir.1979) (*Newman II* ). Accordingly, since the jury found that the surveillance at least had the *effect* of infringing Guzman's right to free speech, the District Court did not err in holding Bevona and the Union liable under section 101.

■ B. *Defendants' liability for acts of agents.* Defendants also argue that the District Court's jury charge was improper because it did not instruct the jury to consider whether APB Investigations was an independent contractor or whether Attorney Raab was acting outside his authority. Defendants contend that, if the jury had answered these questions in the affirmative, defendants would not have been liable as principals for those acts. This argument lacks merit. Even if the Court erred in not instructing the jury to determine the scope of the agency relationships, any error would have been harmless because the jury found that the defendants ratified the unlawful acts by reviewing and approving them in meetings of the Joint Executive Board.

■ To give substance to litigation under section 101 of the LMRDA, courts follow the lead set by the Supreme Court for section 301 cases in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957): Courts fashion federal law consistent with the aims of the statute, but taking guidance from state common law. *Detroy v. American Guild of Variety Artists,* 286 F.2d 75, 78–79 (2d Cir.), *cert. denied,* 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961); *Falcone v. Dantinne,* 420 F.2d 1157, 1165 (3d Cir.1969); *see also Parks v. International Brotherhood of Electrical Workers,* 314 F.2d 886, 903–04 (4th Cir.), *cert. denied,* 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963) (Title III of LMRDA).

■ In New York, a principal is liable for any of its agent's acts that the principal ratifies. *New York State Medical Transporters Ass'n, Inc. v. Perales,* 77 N.Y.2d 126, 131, 564 N.Y.S.2d 1007, 566 N.E.2d 134 (1990); *Prisco v. New York,* 804 F.Supp. 518, 523 (S.D.N.Y.1992). A party may also be held liable for the unlawful actions of an independent contractor if it ratifies those actions. *Vogel v. New York,* 92 N.Y. 10, 19 (1883); *Strickland v. State,* 13 Misc.2d 425, 177 N.Y.S.2d 983, 988 (Ct.Cl.1958), *appeal dismissed,* 10 A.D.2d 797, 202 N.Y.S.2d 1006 (App.Div.1960); 3 N.Y. Jur. 2d *Agency* § 349 (1986). To apply these general rules in the context of section 101 of the LMRDA would not violate any policies underlying the statute. Indeed, they reinforce the basic purpose of the Act to allow union members, by resort to the courts, to check abusive actions by union officials.

## III. Amending the complaint

■ Defendants argue that the District Court abused its discretion in permitting Guzman to amend his complaint on the eve of trial. As defendants recognize, however, the District Court has broad discretion to permit an amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Fed. R. Civ. P. 15(a). Here, defendants informed Guzman in 1992 that they believed that the law precludes attorney's fees if defendants were sued only in their individual capacities. However, until the District Court's March 1995 ruling on defendants' motion for summary judgment, it was not clear that plaintiffs would be allowed to seek attorney's fees under the common benefit theory only if they sued the officers in their official capacities. That ruling precipitated Guzman's motion to amend, which the District Court reasonably granted.

## IV. Scope of the injunction

Finally, defendants contend that the injunction was too broad. Pursuant to section 301(a) of the LMRA, 29 U.S.C. § 185(a) (1994), the District Court granted injunctive relief against further violations of the Union constitution. *See Shea v. McCarthy,* 953 F.2d 29, 31–32 (2d Cir.1992). Defendants challenge the injunction on four grounds: First, it enjoins defendants who have retired from the Joint Executive Board; second, it does not rely upon any recent misconduct by the other defendants that would justify a finding of substantial and immediate irreparable injury; third, it protects Guzman's "supporters," who were not parties to the

litigation or victims of the earlier injury; and fourth, it enjoins the defendants from inciting others to "physical actions," which defendants claim is beyond the scope of the harm threatened by defendants and violative of defendants' First Amendment rights.

As a general matter, "a district court has broad discretion to enjoin possible future violations of law where past violations have been shown, and the court's determination that the public interest requires the imposition of a permanent restraint should not be disturbed on appeal unless there has been a clear abuse of discretion." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir.1972).

Most of the defendants' contentions lack merit. The unlawful acts by defendants, combined with evidence of Bevona's continued recalcitrance and the recent attacks on Guzman and his supporters by union shop stewards, reasonably support the District Court's grant of an injunction. Because the defendants' conduct may chill the rights not only of Guzman but also of the supporters he attempted to organize, the District Court was entitled to frame the injunction to protect union members who were not parties to this action. *See Belton v. Air Atlanta, Inc.,* 647 F.Supp. 28, 30–31 (N.D.Ga. 1986). Nor is the language of the injunction overbroad; Bevona has the right to continue to criticize Guzman as a "management front" as long as Bevona does not go beyond advocacy to incite others to unlawful activity against Guzman. *See Brandenburg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829–30, 23 L.Ed.2d 430 (1969).

There is merit, however, in the Union's argument that the injunction is overbroad as applied to defendants who have retired from all association with the Union. As to these defendants, the District Court could not find a "reasonable likelihood that the wrong will be repeated." *Manor Nursing Centers,* 458 F.2d at 1100. We therefore modify the injunction to except the retired defendants, Baumann, Currenti, DeJesus, Jean–Jacques, LaRosa, Mergen, and Mumm.

### Conclusion

The judgment of the District Court is modified to except from the injunction defendants Baumann, Currenti, DeJesus, Jean–Jacques, LaRosa, Mergen, and Mumm. In all other respects, the judgment is affirmed.